PROVIDED TO MARTIN
CORRECTIONAL INSTITUTION
ON 5-15-13
FOR MAILING

# FIFTH AMENDED
# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. §1983

**HENRY JAMES LAFAVORS,**
Inmate # 642200
    Plaintiff,

v.                                                                      Case No.: 4:12cv30 RH/CAS

Dr. J. Scott Thayer, MED, et. al.,
Dr. Ronald Solorzano, M.D. MED, et. al.,
    Defendant(s).                                      /

## CIVIL COMPLAINT UNDER SECTION 1983

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I. PLAINTIFF:

Sate your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

    Name of Plaintiff:    **Henry J. Lafavors**
    Inmate Number:    **642200**
    Prison or Jail:    **Martin Correctional Institution**
    Mailing address:    **1150 SW Allapattah Road**
                               **Indiantown, Florida 34956**

## II. DEFENDANT(S):

Sate the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant:

    (1)    Defendant(s) name: **Dr. J. Scott Thayer,**
           Official position:    **MED**
           Employed at:    **F.D.O.C./ State of Florida**
           Mailing address:    **The Capitol, Suite PL-01**
                                 **Tallahassee, FL 32399-1050**

    (2)    Defendant(s) name: **Dr. Ronald Solorzano**
           Official position:    **M.D. MED**
           Employed at:    **F.D.O.C./ State of Florida**
           Mailing address:    **The Capitol, Suite PL-01**
                               **Tallahassee, FL 32399-1050**

    (3)    Defendant(s) name: _____
           Official position: _____
           Employed at: _____
           Mailing address: _____
                                    _____

III. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of administrative remedies is required prior to pursing a civil rights action regarding conditions or events in any prison, or detention center. 42 U.S.C. §1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subjected to dismissal.

IV. **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or similar facts/ issues involved in this action?

   Yes ☐   No ☒

   1. Parties to the previous action:
      (a) Plaintiff(s): _____
      (b) Defendant(s): _____
   2. Name of Judge: _____ Case #: _____
   3. County and Judicial Circuit: _____
   4. Approximate filing date: _____
   5. If not still pending, date of dismissal: _____
   6. Reason for dismissal: _____
   7. Facts and claims of case: _____

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/ issues involved in this action?

   Yes ☒   No ☐

   1. Parties to the previous action:
      a. Plaintiff(s):      **Henry J. LaFavors**
      b. Defendant(s):      **Lourdes, Douglas, Calvin, Pliskin**
   2. District and judicial Division: **U.S. District Court Northern District**
   3. Name of judge: **R. Hinkle** Case #: **4:08cv371-RH**
   4. Approximate filing date: **August 2008**
   5. If not still pending, date of dismissal: **May 2011**
   6. Reason for dismissal: **Failure to Exhaust**

3

7. Facts and claims of case: **Deliberate indifference to serious medical needs/ cruel and unusual punishment.**

**(Attach additional pages as necessary to list other federal court cases)**

C. Have you initiated other actions (*besides* those listed above in Questions (A) and (B) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes ☒  No ☐

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to the previous action:
   a. Plaintiff(s): **Henry J. LaFavors**
   b. Defendant(s): **Fla. Dept. of Corr., et. al.,**
2. District and judicial Division: **U.S. District Court Northern District**
3. Name of judge: **unsure**    Case #: **500-SPK (unsure)**
4. Approximate filing date: **2010**
5. If not still pending, date of dismissal: **2011**
6. Reason for dismissal: **Unsure**
7. Facts and claims of case: **Denial access to court, excessive force.**

D. Have you had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes ☒  No ☐

1. Parties to the previous action:
   a. Plaintiff(s): **Henry J. LaFavors**
   b. Defendant(s): **Broward County Sheriff Ken Jenne**
2. District and judicial Division: **U.S. District Court Southern District**
3. Name of judge: **unsure**    Case Docket #: **unsure**
4. Approximate filing date: **2003** Dismissal Date: **same**
5. Reason for dismissal: **Frivolous**

4

6.  Facts and claims of case: **Deliberate indifference to serious medical needs/ cruel and unusual punishment.**

**(Attach additional pages as necessary to list other federal court cases)**

## V.   STATEMENT OF FACTS

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes</u>. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint).**

This case was previously litigated in case number 4:08cv371RH/WCS for several years. (i.e., that case was dismissed without prejudice for alleged failure to exhaust administrative remedies. Docs. 101-102. The District Judge Hinkle conducted a bench trial with the custodians for the Florida Department of Corrections to determine the exhaustion issue on May 24, 2011. However, the Court proceeded the trial in the absence of Plaintiff's presence due to Plaintiff's difficulty in locating the Court in Tallahassee and automobile problems. Overall, the Plaintiff did arrive and argued the exhaustion issue but was unable to make objections against the custodians as that proceeding was already completed by the time of the Plaintiff's arrival at the courthouse).

Here, the Plaintiff asserts that while he was an inmate in the Florida prison system at Taylor Correctional Institution, he suffered ["serious medical needs"] chronic large infected nasal polyps for several years, surgery [was] necessary requiring the removal of the polyps. A certified doctor (Specialist) ordered the need for [u]rgent surgery, but the doctor's order/referral was overruled by two high ranking prison officials.

1.  In January 2003, the Plaintiff visited Dr. Rosenbaum at Broward General Medical Center for purposes of examining his nasal polyps that were large and obstructing his sinus causing chronic infection of the nose. According to the doctor, when the sinusitis had developed and drainage from the cavities were obstructed by deformity and swelling within the Plaintiff's nose explained the pain suffered by Plaintiff in the region of the infected sinus. After taking some x-rays, the doctor determined that the treatment of this condition required the removal of the nasal obstruction (polyps), followed by measures to overcome whatever chronic infection exists. Because, such symptoms constituted a condition of "urgency," degeneration and extreme pain the doctor (Rosenbaum) scheduled the Plaintiff for nasal polyp surgery to began on February 2, 2003. Medication was prescribed until then.

2.  On January 29, 2003, only days before the surgery, the Plaintiff got arrested in Broward County on non-violent offense(s), and could not meet the surgery date because it was impractical here. Nonetheless, for the next thirteen (13) months at the jail, the Plaintiff sought medical help and requested for surgery. The Plaintiff told the jail medical staff all about his consultation and examination and diagnosis by Dr. Rosenbaum. The Plaintiff received from the jail medical staff some sinus tablets and Flunisolide nasal spray.

3.  On March 4, 2004, the Plaintiff was transported to South Florida Reception Center (S.F.R.C.) after his conviction in Broward County on the non-violent offense(s). While at S.F.R.C., the Plaintiff told the medical staff all about his medical history with his nasal polyp problem. Plaintiff was treated for his condition.

4. On or about March 25, 2004, the Plaintiff was transferred to Charlotte Correctional Institution. Upon arrival, the Plaintiff told the medical staff about all of the problems concerning his nasal polyps. The Plaintiff further requested for surgery advising that the Flunisolide caused a burning sensation. The Plaintiff was treated for his chronic infected large nasal polyps for the next 45 days while at Charlotte C.I.

5. On May 15, 2004, the Plaintiff was relocated to Taylor Correctional Institution in Perry, Florida. At the time the Plaintiff arrived at Taylor (TCI) Main Unit the Plaintiff went over [all] of his medical issues with the intake nurse. He showed the papers that were given to him by Dr. Rosenbaum to the nurse. (i.e., the papers represented the doctor's evaluation and treatment for the nasal polyps). For two (2) full years at the prison main unit, the Plaintiff was prescribed only CT tablets, other sinus pills and nasal spray including the Flunisolide that burnt. During the course of this two (2) years, the Plaintiff advised each doctor and/or nurse that the Flunisolide caused a burning sensation and he requested nasal polyp surgery. The medical staff ignored all warnings and signs pointing out that surgery [was] necessary and prescribed on-and-off again treatment for the Flunisolide corticosteroid nasal spray. This was the first two (2) years of steroid therapy. Here, the medical record is clear that in the course of the two years while at the main unit, the Plaintiff suffered generally, burning, stinging nose, nose bleed (occasional), sore throat, headache and pain, swelling in the face around the nose, serious shortness of breath, chest pain, discomfort, mental anguish, and depression from the "delay" for the request for necessary surgery and "denial" for adequate medical treatment for two (2) full years by prescribing Flunisolide, a less efficacious treatment in avoiding to pay for the necessary surgery.

6. In March 2006, the Plaintiff was again relocated to TCI annex, where upon his commitment, the Plaintiff told the medical team (i.e., the annex two on-call nurses), all about his medical condition including [all] of his previous symptoms reference the infected nasal polyps. The Plaintiff also at the time of the medical inception or first examination, showed the examiner the papers that he had received from Dr. Rosenbaum regarding his (Dr. Rosenbaum's) treatment/surgery care plan. For more than two (2) years, the prison medical staff at the annex prescribed for the Plaintiff the regular CT tablet and other sinus pill, the once again on-and-off again Flunisolide nasal spray and, ocean mist nasal moisturizer. During this time while the Plaintiff was at the annex, he spoke face-to-face with each doctor that had examined him (i.e., Dr.(s) Lourdes, Douglas, and nurse Pliskin), while at the annex, explaining to them that the surgery was necessary because the pills and spray were non-effective and for years not working. (It is worth noting that none of the prison's medical staff at this point had even recommended the Plaintiff to see a specialist in the face of all medical judgment that the treatment prescribed afforded the Plaintiff no relief).

7. On July 31, 2008, the Plaintiff was subsequently transferred to TCI's work camp. On that day, the Plaintiff advised and the intake nurse acknowledged that the nasal polyps had ruptured and that his breathing through his nose was completely obstructed and, that he was in serious pain. (i.e., the obstruction was so obvious and was also observed personally by Sergeant McCloud because the nasal polyps protruded from the Plaintiff's nose). *Id.* The nurse continued the earlier course of treatment.

8. On October 7, 2008, at approximately 22:00, while in "S" Dorm, the Plaintiff was awaken from his sleep by inmates Bernard Sparrow and Timothy Taylor after observing the Plaintiff hemorrhaging and bleeding from the nose and mouth.

9. "S" Dorm Sergeant w/m and Lieutenant Brown escorted Plaintiff to the medical building and from there to the main unit hospital infirmary for medical emergency.

10. On the following morning, the Plaintiff was seen by Dr. Calvin (Steven). During the initial examination by Dr. Calvin, it was determined [by the doctor], that surgery was required for treatment for the Plaintiff's chronic nasal polyp condition. At this point, Dr. Calvin filed a request for consultation with the ENT specialist at North Florida Reception Medical Center, (NFRMC) in Lake Butler, Florida. Dr. Calvin also prescribed the usual course of treatment with this addition,

6

a steroid treatment of prednisone tablet was added to help reduce the inflammation and swelling of the infected nasal polyps.

11. At the consultation meeting at NFRMC, the Plaintiff met with Dr. Aguilar (i.e., the ENT specialist), regarding the nasal polyps and during the evaluation the Plaintiff was given an Magnetic Resonance Image (MRI) for diagnosis of severity of the nasal polyps. Upon his findings in the reading of the MRI, Dr. Aguilar immediately determined that the need for nasal polyp surgery was [u]rgent and immediately filed a referral to the Utilization Management requesting [u]rgent nasal polyp surgery for the immediate removal of large infected nasal polyps that protruded from the Plaintiff's nose. Here, there was no difference in medical opinion in Dr. Rosenbaum, Dr. Calvin and Dr. Aguilar on whether surgery [was] necessary. In fact, Dr. Aguilar expressed the reservations for urgency of the Plaintiff's need for medical care (surgery) by verifying medical evidence (i.e., burning, stinging nose, nose bleed, sore throat, headache and pain, swelling in the face and nose, serious shortness of breath, chest pain, discomfort, mental anguish and depression, hemorrhaging and bleeding throat) sustained over the years (approximately five) the denial/delay of adequate medical care. The Plaintiff would definitely benefit from surgery.

12. In March 2009, Dr. J. Scott Thayer "denied" the ENT Specialist's order [u]rgent surgery. Dr. Thayer denied the request on the ground that: Inmate is presently on steroid treatment and can be re-evaluated for response in a couple of months. At the time, Dr. Thayer denied the nasal polyps surgery there was available "verifying medical evidence" and the doctor was aware that the Plaintiff was likely to, or further suffer infection, and that he was aware of the Plaintiff's injuries suffered including the burning, stinging nose, nose bleed, sore throat, headache and pain, swelling in the face and nose, serious shortness of breath, chest pain, discomfort, mental anguish and depression, hemorrhaging and bleeding throat, but, did not know the latest extent thereof at the time that he denied the request for the surgery because, Dr. Thayer refused to consult with the specialist ordering the surgery or conduct a personal examination of the Plaintiff for an update of the Plaintiff's medical condition in avoidance of the cost for surgery and for non-medical reasons as evidenced by the denial. In contrast, Dr. Aguilar knew the drugs taken by the Plaintiff and the length of time that he took them as well as his MRI and other x-ray to this extent, that Dr. Aguilar's examination [s]howed a severely infected nasal deformity and Dr. Thayer's denial for surgery was a "delay" of adequate medical care and constituted deliberate indifference to Plaintiff's serious medical needs.

13. Dr. Thayer had the requisite knowledge that the delay would worsen the Plaintiff's condition. He was aware that the Plaintiff had objectively serious medical condition and demonstrate deliberate indifference in that the harm was not averted. Dr. Thayer refused to act on a basic human need in the existence of a chronic condition that caused substantial pain, intolerable by the length of delay, with no reason for the delay and, was "more than ordinary lack of due care for the prisoner's (Plaintiff's) interest or safety which resulted in further significant injury and unnecessary wanton infliction of pain." At the time of the denial/delay for surgery, the law was clear in reference to deliberate indifference medical claims. That Dr. Thayer was working under color of law for a "municipality" that allowed or authorized employees to deny or delay referral for [u]rgent nasal polyps surgery under policy, custom, or practice," while in his official position/capacity and thus, is sued.

14. Simultaneous to Dr. Thayer's denial/delay for the surgery, the Plaintiff, being unaware of the denial revisited the prison medical department and met with Dr. Dratler. It was at that time (i.e., in March 2009), Dr. Dratler disclosed to the Plaintiff that the surgery [was] denied. After his examination of Plaintiff's nasal polyps condition, Dr. Dratler filed his own request for new consultation with the ENT (Dr. Aguilar) at Lake Butler.

15. After a twenty (20) month delay, in November 2010, the Plaintiff was again seen and examined by Dr. Aguilar on the Plaintiff's condition. At the end of the examination/evaluation, Dr. Aguilar determined that surgery was in demand and mandated and filed a new referral

7

requesting [u]rgent nasal polyps surgery. Dr. Aguilar believed the time period between the first consultation, MRI, and referral was substantial enough that another referral was warranted.

16. On December 15, 2010, the second referral for [u]rgent nasal polyp surgery was "denied" by Dr. Ronald Solorzano. Dr. Solorzano's reason for denying the request was based on the "same" ground as that used by Dr. Thayer, avoiding the cost for surgery: "inmate is presently on steroid treatment and can be re-evaluated for response in a couple of months." Prior to denying the surgery the Plaintiff went to see a specialist in ENT for determining nasal polyp surgery. Dr. Aguilar had determined that the large polyps in Plaintiff's nasal cavity were ruptured and infected with deformity and he recommended surgery. The Plaintiff desired surgery. At the time Dr. Solorzano "denied the nasal polyp surgery," there was available "verifying medical evidence" the Plaintiff was suffering from burning and stinging in the nose, nose bleed, headache and pain, discomfort, hemorrhaging, and bleeding in the throat," but did not know the latest extent thereof at the time that he denied the request for the surgery because, Dr. Solorzano refused to consult with Dr. Aguilar about the requested surgery or conduct his own examination of the Plaintiff for an update. Dr. Solorzano refused the necessary surgery to avoid the cost of spending for non-medical reason as evidenced by the denial. He (Dr. Solorzano) was aware that the Plaintiff was likely to, or further suffer infection in the "delay" of his denial. Dr. Solorzano was also aware that the 2009 referral for [u]rgent nasal polyp surgery was denied by the record evidence and that 20 months had passed, between the time he denied the second referral and the MRI examination. In contrast, Dr. Aguilar knew the medications the Plaintiff was taking and the length of time of taking them, the MRI and other x-ray to this extent, that Dr. Aguilar's examination [s]howed a severely infected nasal deformity and Dr. Solorzano's denial for surgery here, constituted a "delay" in adequate treatment and not based on a professional medical judgment and was deliberate indifferent to Plaintiff's serious medical needs. And for non-medical reason. Dr. Solorzano had the requisite knowledge that the delay would further worsen the Plaintiff's condition and increase the pain. He was aware the Plaintiff had objectively serious medical condition and demonstrated deliberate indifference in that the harm was not averted. He refused to act on a basic human need in the existence of a chronic serious medical condition that was causing a significant and substantial unnecessary pain, intolerable by the length of delay, with no reasonable justification for the delay and, was "more than ordinary lack of due care for the Plaintiff's interest or safety which resulted in further significant injury and unnecessary wanton infliction of pain." At the time of the denial/delay for surgery, the law was clear in reference to deliberate indifference medical claims. Dr. Solorzano was working under color of law under a "municipality" that allowed and authorized its employees to deny or delay referral for requested [u]rgent nasal polyp surgery under policy, custom, or practice, while in his official capacity and thus, is sued.

The Plaintiff does not waive any right to file claims against any undisclosed party not known at this time, but after due diligence.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V.

**If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

Dr. J. Scott Thayer (or representative) was deliberately indifferent to the Plaintiff's medical needs by deny/delay for surgery, and thus, violated his Eighth Amendment protection against cruel and unusual punishment.

Dr. Ronald Solorzano was deliberately indifferent to the Plaintiff's medical needs by deny/delay for surgery, and thus, violated his Eighth Amendment protection against cruel and unusual punishment.

8

## VII. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/statutes.

Dr. J. Scott Thayer (or representative) is sued in his individual and in his official capacity for more than seven (7) digits at jury trial.

Dr. Ronald Solorzano is sued in his individual and in his official capacity for more than seven (7) digits at jury trial. .

**I declare under penalty of perjury that the foregoing statements of fact, including all continuation pages, are true and correct.**

5-15-13
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint (check one):

☒ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 15 day of May, 2013.

/s/
Henry J. Lafavers DC# 642200
Martin Correctional Institution
1150 S.W. Allapattah Road
Indiantown, Florida 34956

9

In the Circuit Court of the Second Judicial Circuit in and for Leon County Florida

Henry J. LaFavors, Pro Se,
Plaintiff,

vs.

Estate of Dr. J. Scott Thayer, M.D., et al.

Case No. _____
Provided by Clerk of Court

PROVIDED TO MARTIN CORRECTIONAL INSTITUTION ON 5/3/13 FOR MAILING

## Civil Claim / Lien

Comes Now Plaintiff and moves this Honorable Court to place a claim/lien against the estate of the late Dr. J. Scott Thayer, former employee of The Florida Department of Corrections / State of Florida pursuant to United States District Court case no. 4:12cv30-RH/CAS. Dr. Thayer died in the course of getting sued in a claim against him for deliberate indifference to serious medical needs of the Plaintiff. The Plaintiff request this claim expedited for purpose of meeting a valid deadline in the above mentioned proceeding (i.e., 12cv30-RH-CAS) and, request also, that [all] necessary papers for process be forwarded to me in commencing this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of hereof, has been placed in the hands of prison officials, this _3_ day of _May_ 20_13_ for timely filing with this Court under the "Mail-Box Rule," and forwarded to: _City Counsel_,

_____

_____

_____, Pro Se, #_____
Martin Correctional Inst.
1150 SW Allapattah Road
Indiantown, Florida 34956-4310

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

Henry J. LaFavors,
    Plaintiff,

v.

Dr. J. Scott Thayer, MED, et. al.,
Dr. Ronald Solorzano, M.D. MED, et. al.,
    Defendant(s).

Case No. 4:12cv30-RH/CAS

## MOTION FOR EXTENSION OF TIME

**COMES NOW** the Plaintiff Henry J. LaFavors *pro se*, pursuant to this Honorable Court's order (Doc. 41) Order granting leave to file a fifth amended complaint and the U.S. Magistrate's Order dated on April 23, 2013, resetting the deadline for the order (Doc. 41) moves this Honorable Court for extension of time of 90 days to "diligently" research Florida Probate Law(s) for the following reasons:

The District Court Robert L. Hinkle for the first time advises and the Plaintiff acknowledges that as to one defendant Dr. Thayer who died in October 2009, Florida Law imposes conditions on a creditors' ability to recover against an estate, including a [requirement] for filing a claim in any probate proceeding and a deadline for filing any lawsuit. That the Plaintiff should not name Dr. Thayer or his estate as a Defendant "unless" he can also allege that he has complied with the applicable requirements of Florida law.

The Court has further stipulated that the deadline established by its order will not be extended absent extraordinary circumstances. Thus, the extraordinary circumstances relied on by the Plaintiff are as follows:

1.    The Plaintiff respectfully submits that he is a *pro se* litigant without any training in probate law.

2. The Plaintiff earlier requested appointment of counsel on his behalf but this Court denied that request (i.e., a request for counsel was also made in this case 08:cv371-RH/WCS but was denied by this Court before this case was refiled and the filing fee paid in full).

3. This Honorable Court "newly" advises a requirement that the Plaintiff must comply first with the rules of probate law before continuing his claim against Dr. Thayer who is deceased in October 2009.

4. That, based on the Court's information here, regarding Thayer, the Plaintiff now seeks new information ("diligently"), in the appropriate court reference the uniform probate code, and system of law relating to all matters of which probate courts have jurisdiction. Which includes the establishment of estates. *Id.*

5. That this Court is put on notice that the Plaintiff is currently indigent and must need to inquire in probate [all] necessary filing fees either indigent status or other within a reasonable allotment of time.

6. That denial for extension of time of 90 days is not necessary in that Plaintiff is able to show a genuine issue of material fact exists that Dr. Thayer ("municipality") acted with deliberate indifference to "serious medical needs" in execution of a policy, custom or practice promulgated and/or instituted by himself or his employer, "denying" a specialist's referral for [u]rgent nasal polyp surgery or surgery for non-medical reasons, delay, and "less efficacious" course of treatment and not a good faith medical judgment.

7. That the extension of time of 90 days is necessary because the relevant law library ("sign-in sheet") provides the inmates with deadlines as a custom only 10 hours each week for legal research.

2

8. That none of the prison law clerks are able to direct or assist the Plaintiff in the field of probate law and thus, is an inadequacy of persons trained in the law.

9. That the request for 90 days is not for delay.

10. That the Plaintiff, in the event cannot meet the probate court requirement within the allotted time requested shall consider discharge of this Defendant. (Note: Dr. Thayer is sued also in his official capacity).

**WHEREFORE**, the Plaintiff requests this Honorable Court for an extension of time for 90 days to file the necessary papers in probate court as to Defendant Dr. Thayer as indicated by this Court.

Dated: 5-3-13          Signed: _____
                                Henry J. LaFayors

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent to _____

_____

_____

_____

by U.S. Postal Service mail on this __3__ day of __May__, __2013__.

Respectfully Submitted,

_____
Henry LaFavors, 642200
Martin Correctional Institution
1150 S.W. Allapattah Road
Indiantown, Florida 34956

3